IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 14-cv-00777-MSK-CBS

NBH BANK, NATIONAL ASSOCIATION,

     Plaintiff,

v.

PRUCO LIFE INSURANCE COMPANY,

     Defendant.

## OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on motions from both parties. The Defendant

Pruco Life Insurance Company ("Pruco") filed a Motion for Summary Judgment (**#39**), the

Plaintiff NBH Bank, National Association responded (**#44**), and Pruco replied (**#48**). NBH Bank

also filed a Motion for Summary Judgment (**#40**), Pruco responded (**#43**), and NBH Bank replied

(**#47**).

## JURISDICTION

This matter was removed from Colorado state court.  This court exercises jurisdiction

pursuant to 28 U.S. C. §1332.

## MATERIAL FACTS

Although somewhat convoluted, the material facts are essentially undisputed and readily-

summarized.  As appropriate, the Court provides further explication in conjunction with its

analysis.

In May 2009, Pruco issued an $800,000.00 term life insurance policy (the Policy) to JPE,

Inc. (JPE).  The Policy insured the life of JPE's principal, Juvenal M. Camacho.  The Policy

identified JPE as the policy owner and Mr. Camacho as the insured.  It contained a schedule of

premium payments required to maintain coverage.  By its terms, the Policy granted JPE a 31-day

grace period to make a past-due premium payment; if a premium remained unpaid at the end of

this grace period, the policy would terminate. It further provided that, so long as Mr. Camacho

was alive, "the owner [JPE] alone is entitled to any contract benefit and value, and to the

exercise of any right and privilege granted by the contract."

At some point in time, JPE obtained a loan of $ 800,000 from an entity called

Bank of Choice; as collateral, JPE pledged $560,000 of the death benefits under the

Policy.  JPE, as owner of the Policy submitted a Request for Collateral Assignment[1] to

---

[1]      The Assignment provides in pertinent part:

> I [JPE] assign to the collateral assignee(s) named in this section[Bank of
> Choice], a collateral interest in the policy . . ., subject to the provisions of
> the policy and to any indebtedness that may exist. As a result of this
> collateral assignment, policy rights may be exercised as follows:
>
> - The owner, without the consent of the assignee, will have the
>   following rights: to designate and change the beneficiary and mode
>   of settlement
> - to change the ownership of the policy
> - to collaterally assign the policy to another assignee
> - to change the frequency of premium payments
>   . . .
>
> The assignee will have the right to receive any Death Benefit as its (his or
> her) interest may appear without consent of the owner. List below any
> other rights to be exercised by the assignee without the consent of the
> owner.
>      Proceeds not to exceed $560,000 (70%) [Handwritten]
> Any other rights and privileges granted by the policy or by us will require
> the consent of the owner and assignee.

Pruco, and Pruco acknowledged receipt.  Under the Assignment, Bank of Choice received only an interest in any death benefits payable; JPE retained all other rights as the owner of the Policy.

Bank of Choice went into receivership in 2011.  The JPE note and Bank of Choice's collateral interest in the Policy proceeds were acquired by the Plaintiff, then-named Bank Midwest National Association, subsequently NBH.

In late 2011, JPE defaulted in its obligations under the Note and NBH commenced suit against JPE and Mr. Camacho on the note.  On March 19, 2012, Anne Drake, an NBH representative, contacted Pruco about the status of the Policy.  Pruco's representative informed her that the Policy had lapsed because the premium payment due on January 19, 2012 had not been paid.  However, the representative informed Ms. Drake that Pruco would accept a payment up until March 21, 2012 to keep the Policy in force.  It advised that if Pruco did not receive payment by that date, the Policy would terminate and only JPE would be able to reinstate it. During the phone call, Ms. Drake also learned that Pruco had the then-defunct Bank of Choice listed as the collateral assignee.  She sought to substitute Pruco's address for that of Bank of Choice, but was advised that an address for an assignee could be changed only upon a written request of the policy owner, JPE.  Ms. Drake also learned that the next scheduled premium was due on June 19, 2012.

NBH elected to make the outstanding premium payment of $21,439.69 by March 21, thus prevented lapse of the Policy on that date.  However, for reasons unspecified in the record, neither JPE nor NBH made the June 2012 premium payment either on its due date or within the grace period.  According to its terms, by late July 2012, the Policy terminated, and at no time did JPE seek to have it reinstated.

Mr. Camacho died on August 18, 2012. NBH Bank requested payment of death benefits under the Policy, but Pruco denied NBH's request because the Policy had lapsed in July, prior to Mr. Camacho's death.

NBH then commenced this action. NBH Bank's Amended Complaint (**#5**) asserts six claims for relief: (1) a request for declaratory judgment to the effect that NBH Bank was an owner of the Policy and therefore was entitled to receive a timely Notice of Policy Lapse; (2) a request for declaratory judgment to the effect that NBH Bank was an assignee under the Policy and therefore was entitled to timely Notice of Policy Lapse; (3) breach of the covenant of good faith and fair dealing in that Pruco failed to deal fairly in refusing to pay death benefits to NBH, and failing to change the address of Bank of Choice to NBH at its request; (4) breach of contract in failing to provide NBH with Notice of Policy Lapse and failing to pay death benefits to NBH; (5) promissory estoppel based on prior notices sent to Mr. Camacho and accepting a premium payment from NBH ; and (6) unjust enrichment based on acceptance of a premium payment from NBH.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of
and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter
for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment
motion, a court views all evidence in the light most favorable to the non-moving party, thereby
favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.
2002).

If the movant has the burden of proof on a claim or defense, the movant must establish
every element of its claim or defense by sufficient, competent evidence. *See* Fed.R.Civ.P.
56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the
responding party must present sufficient, competent, contradictory evidence to establish a
genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th
Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine
dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material
fact, no trial is required. The court then applies the law to the undisputed facts and enters
judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence
of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.
If the respondent comes forward with sufficient competent evidence to establish a prima facie
claim or defense, a trial is required. If the respondent fails to produce sufficient competent
evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of
law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

This case involves cross-motions for summary judgment. Ordinarily, cross motions are
evaluated independently. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d

5

1138, 1148 (10th Cir. 2000).  In this case, however, there are no material facts in dispute and

thus, the Court can adjudicate both motions simultaneously by simply applying the law to the

undisputed material facts.

## ANALYSIS

### A.  Contract Claims

The first four claims asserted by NBH – the two declaratory judgment claims, the claim

for breach of contract, and the claim for breach of the implied covenant of good faith and fair

dealing -- are grounded in contract.  NBH's rights and Pruco's obligations are governed by the

terms of the Policy **(#39-1)** and the Collateral Assignment **(#1-5).**   The parties agree that

Colorado law applies.  Interpretation and application of the contract terms is a question of law.

*Ad Two, Inc. v. City and County of Denver, ex rel Manager of Aviation,* 9 P.3d 373, 376 (Colo.

2000).

#### 1.  Declaratory Judgment Claims

NBH's first two claims seek a declaratory judgment that it was entitled to a Notice of

Lapse of the Policy, either because it was an owner of the policy (Claim 1) or because it was a

recognized assignee (Claim 2).

The Policy designates the "Insured," "Owner," and beneficiary.  According to the Policy,

the Insured is "[t]he person named as the Insured on the first page" of the Policy, which is

Juvenal M. Camacho.  According to the Policy, "the Insured is the owner of the contract, unless

a different Owner is noted in the application . . . The ownership arrangement in effect on the

contract date will remain in effect unless you [the Owner] ask us to change it." Although the

record does not contain an express endorsement or application showing JPE as the Policy Owner,

both parties agree that JPE was[2] and the Collateral Assignment and various correspondence sent

by Pruco agree.  According to the Policy, only the Owner was entitled to exercise the rights and

privileges granted by the contract or by Pruco.

The Court can quickly dispose of NBH's first declaratory judgment claim: that it was

entitled to notices of premium delinquency or policy lapse because it had somehow acquired the

status of "Owner" of the Policy.[3]  NBH's rights in the Policy are co-terminus with those of Bank

of Choice; Bank of Choice's rights in the Policy, in turn, are defined by the terms of the

Collateral Assignment from JPE.  Of the many rights that JPE had as the Policy Owner, it

assigned only one to the Bank of Choice: the right to receive a portion ($560,000) of any benefits

payable under the terms of the Policy.  JPE retained all other rights as the Owner of the Policy,

including the right to designate and change beneficiaries, to change ownership of the Policy, to

---

[2]      If JPE was not the Owner of the policy then, by the Policy's terms, Mr. Camacho, the
Insured, would be considered the Owner.  This would, of course, implicate the validity of the
Collateral Assignment (which was made by JPE, not Mr. Camacho, as the Owner of the policy)
by which NBH claims an interest in the Policy.  In any event, the outcome herein would be
unchanged regardless of whether JPE or Mr. Camacho was the Owner.

[3]      Notably, nothing in the Policy expressly states that even the Policy's Owner is entitled to
notices of premium delinquency or policy lapse that NBH demands here.  The only express
provision in the Policy describing an Owner's right to receive any kind of notice from Pruco is a
provision stating that the Owner "will be notified . . . in advance" of "[a]ny increase or decrease
in premium."  NBH points to no other source of a contractual requirement for the sending of
notices to owners, insureds, beneficiaries, or assignees.  *Compare Federal Kemper Life Assur.
Co. v. Ellis*, 28 F.3d 1033, 1038 (10th Cir. 1994) (finding insurance policy silent as to whether
insurer was required to give notice of premium due, but finding that terms in application for
insurance created ambiguity as to whether insurer was required to send such notice).
        Nor did Colorado law in effect at the time require such notice.  Colorado recently enacted
a statute requiring a life insurer to give policy owners (the statute does not address the rights of
beneficiaries or assignees thereof) advance notice of a policy lapse, C.R.S. § 10-7-105.5, but that
provision, effective January 1, 2015, post-dates the events at issue in this case.  (NBH has not
argued that the statute should have retroactive effect and the Court declines to consider that
issue.)  Notably, the enactment of the statute is persuasive evidence that, prior to 2015, Colorado
law did not require life insurers such as Pruco to provide policy owners or beneficiaries with
advance notice of policy lapses.

adjust the schedule of premium payments, and to adjust the mode of settlement. Thus, at no time did NBH acquire rights that the Owner has in the Policy; at most it was an assignee holding rights to share in death benefits.

NBH appears to offer two arguments as to why it should be considered to hold rights granted to the Policy's Owner. First, it argues that it obtained ownership rights in the Policy by virtue of it becoming an assignee. This argument is untenable on the face of the Collateral Assignment form. That document expressly states that, post-assignment, "[t]he owner, without the consent of the assignee, will [retain]" certain rights, including the right to "change ownership of the policy." The form explains that the assignee "will have the right to receive any Death Benefit . . . without consent of the owner," and invites the person completing the form to identify "any other rights to be exercised by the assignee without the consent of the owner." (No material rights were listed here.) If, as NBH argues, receipt of assignment implicitly entailed a partial or complete transfer of ownership of the Policy itself to the assignee, there would be no reason for the assignment form to so carefully delineate the rights of the owner and the rights of the assignee.

Second, NBH appears to argue that, by making the premium payment in March of 2012, it became entitled to rights accruing to the Owner, including rights to notice of premium delinquency and lapse. Such argument is untethered to any particular term of the Policy or any other contractual source. There is nothing in the Policy that reflects acquisition of ownership rights in the Policy by a third-party simply due to payment of premiums. To the contrary, the terms of the Policy expressly state that a transfer of ownership rights requires the existing Owner – JPE -- to send "us a request in a form that meets our needs." There is no evidence that JPE

8

acted to expand NBH's rights beyond those articulated in the Collateral Assignment, much less that Pruco accepted any purported change in ownership of the Policy.

Accordingly, there is no contractual basis for NBH to have acquired any rights that run to the Owner of the Policy and thus, Pruco is entitled to summary judgment on NBH's first claim for declaratory judgment.

Similar logic entitles Pruco to summary judgment on NBH's second claim for declaratory judgment: that NBH's status as recognized assignee entitled it to notices of premium delinquency or policy lapse.  Once again, NBH points to no contractual provision that expressly or impliedly creates rights to such notice in an assignee.  The assignment form would seem to disprove this contention, as it states only that "The assignee will have the right to receive any Death Benefits," and it invites the parties to "[l]ist below any other rights to be exercised by the assignee without the consent of the owner."  If, as NBH argues, the assignment of benefits necessarily included the right of the assignee to receive certain notices from Pruco without the owner's consent, one would expect that right to be articulated in the form just as the right to receive benefits is.

Accordingly, the Court finds that Pruco is entitled to summary judgment on NBH's second claim for declaratory relief as well.

### 2.  Breach of contract

The preceding discussion is sufficient to dispose of NBH's breach of express contract claim as well.  NBH points to nothing in the Policy itself or in any other document of contractual significance that purports to grant to NBH, expressly or due to its status as assignee, the right to receive notices of premium delinquency or policy lapse.  NBH's Amended Complaint also alleges that Pruco's failure to pay it the death benefits provided in the Policy constitute a breach

of contract, but it is undisputed that the policy was terminated due to non-payment before Mr.

Camacho's death, such that no benefits are payable to any beneficiary.  Accordingly, Pruco is

entitled to summary judgment on NBH's claim for breach of express contract.

### 3.  Breach of the implied covenant of good faith and fair dealing

NBH alleges that the Policy conferred discretion upon Pruco with regard to issuing

notices of premium delinquency and policy lapse, as well as with regard to accepting change of

address notices by assignees, and that Pruco failed to exercise that discretion in good faith.  It is

not clear whether NBH's claim is actually the classic, universally-recognized common law claim

of breach if the implied covenant of good faith and fair dealing (as stated in the Amended

Complaint), or whether NBH is actually alleging a claim for "bad faith breach of contract," a

type of tort claim that Colorado recognizes only in the insurance context (as NBH appears to

argue in its response to Pruco's motion).  *See generally Amoco Oil Co. v. Ervin,* 908 P.2d 493,

498 (Colo.1995) (describing the covenant of good faith and fair dealing), *Nunn v. Mid-Century*

*Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010) (describing bad faith breach of insurance contract).  In

the interest of completeness, the Court will address each in turn.

Every contract in Colorado contains an implied duty of good faith and fair dealing.

*Amoco*, 908 P.2d at 498.  That duty exists "to effectuate the intentions of the parties or to honor

their reasonable expectations." *Id.*  It may be invoked "when the manner of performance under a

specific contract term allows for discretion on the part of either party" if "the parties, at

formation, defer a decision regarding performance terms of the contract leaving one party with

the power to set or control the terms of performance after formation." *City of Golden v. Parker*,

138 P.3d 285, 292 (Colo.2006).  However, it does not interject new substantive terms into an

agreement or cause a party to assume obligations that vary or contradict the contract's express

provisions. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo.App.1994).

To the extent this is the claim being asserted by NBH, the claim fails because NBH has not identified any contractual provision that confers discretion upon Pruco regarding who should receive notice of premium delinquencies or policy lapses.  As noted above, the Policy does not contain provisions requiring Pruco to give such notice to anyone, much less deferring the question of who must be given such notices to Pruco's discretion.  (The fact that Pruco voluntarily attempted to give a notice to JPE, as discussed below, does not obligate Pruco to extend the same courtesy to NBH.[4])  Thus, NBH's argument improperly seeks to use the doctrine of good faith and fair dealing to impose a new substantive term into the Policy.  *See generally Wells Fargo Realty Advisory Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo.App. 1994) (doctrine "requires only that the parties perform in good faith the obligations imposed by their agreement").

Turning to a claim for bad faith breach of insurance contract, Colorado recognizes that "insurance contracts are unlike ordinary bilateral contracts," in that "insureds enter into insurance contracts for financial security . . . and for peace of mind." *Nunn*, 244 P.3d at 119. Thus, Colorado recognizes a tort-like claim where "an insurance company [unreasonably] delays or refuses to make payments owed directly to its insured under a first-party policy." *Id.*  The

---

[4]        Nevertheless, the record reflects that Pruco did attempt to give notice of the policy's lapse to the assignee, by means of a letter dated August 21, 2012.  As discussed herein, that letter was sent to Bank of Choice, not NBH, as Pruco's records continued to reflect the assignment to the former rather than the latter.  Notably, the letter was sent long after the policy had lapsed and nothing in the record indicates that NBH, as assignee, had the power under the Policy to unilaterally reinstate the lapsed policy.  Rather, by the terms of the Policy, that power belonged exclusively to the Policy's Owner (JPE) and required a showing that, among other things, "the Insured [remains] insurable for the contract" (a showing that neither JPE nor NBH could have made due to Mr. Camacho's death several days earlier).  Thus, even if Pruco's records had been accurate and the notice had been sent to NBH instead of Bank of Choice, the outcome would have been the same.

name of the claim is something of a misnomer: an insured is not required to show that the denial

of benefits ultimately constituted a breach of the insurance contract, as the claim is focused on

the conduct of the insurer during the handling of the claim, not on the ultimate resolution of the

claim.  *Wagner v. American Family Mut. Ins. Co.*, 569 Fed.Appx. 574, 580 (10th Cir. 2014).  The

elements of the claim require the insured to show: (i) that the insurer acted unreasonably in its

handling or adjudication of the claim; and (ii) that it did so with knowledge of or in reckless

disregard for the fact that no reasonable basis existed for its action.  *Brodeur v. American Home

Assur. Co.*, 169 P.3d 139, 147 (Colo. 2007).

     The Court finds that NBH has failed to show that it stands in the shoes of an insured, as

well as that Pruco engaged in unreasonable conduct in either its denial of NBH's demand for

payment of death benefits or in its failure to send NBH notices of premium delinquency or policy

lapse.  *See generally Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo.App. 2008)

(although reasonableness is usually a question of fact, it may be decided as a matter of law if the

material facts are undisputed).  It is undisputed that the policy lapsed due to non-payment of

premiums prior to Mr. Camacho's death; therefore, it cannot be unreasonable for Pruco to refuse

to pay benefits.  The fact that NBH may have been unaware that a premium was delinquent or

that the policy had lapsed does not render Pruco's decision not to pay benefits on a lapsed policy

unreasonable, nor does that fact that NBH might have been willing to continue to pay the

premiums on JPE's behalf had it been so advised.  Nor, for the same reasons discussed herein,

can the Court find that Pruco acted unreasonably in failing to give NBH notice of the delinquent

premiums and policy lapse.  The Policy's terms did not require Pruco to give such notice to NBH

or anyone else and it cannot be unreasonable for an insurer to fail to give notice to a person of

some event if no such notice is required by the policy.

Accordingly, the Court finds that Pruco is entitled to summary judgment on each of NBH's contractual claims.

### B. Equitable claims

NBH's remaining claims – for promissory estoppel and for unjust enrichment – sound in equity rather than law.

#### 1. **Promissory estoppel**

According to the Amended Complaint, NBH asserts a claim for promissory estoppel, contending that it relied on two promises by Pruco to its own detriment: (i) that, by sending a Notice of Cancellation for Non-Payment of Premium to Mr. Camacho and to Bank of Choice, Pruco "was promising its insureds [which NBH considers to include itself] that it would provide notice of an impending lapse or cancellation"; (ii) that, by accepting NBH's payment of outstanding premiums in March 2012, Pruco "was promising [NBH] it would treat [NBH] as the owner of the Policy and . . . would provide [NBH] with timely and effective Notice of future lapses in coverage."

To establish a claim for promissory estoppel, a plaintiff must show: (i) that the defendant made a promise to the plaintiff; (ii) that the defendant should reasonably have expected that the promise would induce action or forbearance by the defendant; (iii) that the plaintiff reasonably relied on the promise to its detriment; and (iv) that enforcement of the promise is necessary to prevent injustice.[5]  *Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 151 (Colo. 2006).

---

[5]     NBH relies upon a number of Colorado decisions for the proposition that "an insurer will be estopped from forfeiting a policy when the insurer has engaged in a course of dealing and course of conduct by which the insurer has created an implied agreement to act accordingly." *Citing American Nat. Ins, Co, v,* Cooper, 169 Colo. 420, 425 (1969), citing: *Western Cas. Co. v. Aarons*, 85 Colo. 591 (1929); see also: *Lagrow v. Head Camp Pac. Jurisdiction, W.O.W.*, 75 Colo. 466 (1924).

None of these cases are inconsistent with the general application of the doctrine of promissory estoppel.  In each case, the insurer received or retained premium payments after a

NBH fails to identify any "promise" made by Pruco to it.  The first "promise" alleged in the Amended Complaint is that, by sending a notice of non-payment of premiums to Mr. Camacho,  Pruco somehow "promised" NBH that it would provide NBH with further notices of delinquency or lapse.  This contention is unsupported by the record in several respects.  First, there is no evidence that Pruco ever sent a notice of any kind to Mr. Camacho himself.  The record does contain several documents entitled "Premium Notice" sent to JPE, the owner of the policy, advising of upcoming premiums due and a letter to JPE dated February 28, 2012, advising it of the lapse of the policy for non-payment and explaining how JPE could reinstate the policy.  Second, despite NBH's allegations in the Amended Complaint, there is no evidence in the record that Pruco ever sent a notice of premium delinquency or policy lapse to Bank of Choice anytime prior to August 21, 2012; in other words, after the policy had lapsed a second time and Mr. Camacho had passed away.  Third, nothing in either of those notices purported to make any promise to NBH that Pruco would send such notices directly to NBH.

Indeed, the record unambiguously demonstrates the exact opposite: when Ms. Drake called Pruco and spoke to a representative on March 19, 2012, she specifically explained that "we need to make sure that we are getting notices so that we're not having to call every single month to make sure it's current," to which the Pruco representative responded that it required the Policy Owner's signature on any request to change a mailing address.[6]  Far from reflecting any

default under the insurance policy, but refused to extend the coverage that the premium payment secured.  In essence, by accepting the payment, the insurer promised to extend the insured's coverage accordingly.  Here, NBH does not allege that it tendered the June 2012 premium payment to Pruco at any time, much less that Pruco retained that payment without reinstating Mr. Camacho's coverage.  Thus, these cases are inapposite.

[6]      NBH argues that the representative was wrong and that Pruco's actual policies do not require a policy owner's approval to effectuate a change in a mailing address for an assignee.  Although this argument is not particularly relevant to a promissory estoppel claim, which focuses on whether Pruco made a promise to do something for NBH (rather than mistakenly stating that

promise by Pruco to send future notices to NBH, Pruco made it crystal-clear that it would not be

sending notices directly to NBH, unless and until NBH could persuade JPE (through Mr.

Camacho) to request an address change.  NBH's argument that these acts somehow constituted a

"promise" by Pruco to it is such a gross distortion of the record as to border on sanctionable

conduct.  Simply put, there is no evidence anywhere in the record to suggest that Pruco ever

promised to NBH that it would begin sending premium notices and lapse letters directly to NBH.

Similarly, NBH's contention that, by accepting NBH's premium payment on JPE's

behalf, Pruco was promising to send future notices directly to NBH is also unsupported in the

record.  Once again, the conversation between Ms. Drake and the Pruco representative

unquestionably reflects the opposite: that NBH was free to reinstate the policy by making the

overdue premium payment, but that it could only receive notices sent directly to it when it

convinced JPE to sign off on a change of address letter.  It may seem to NBH that Pruco's

position on this issue was unnecessarily rigid, overly bureaucratic, unsympathetic, and perhaps

even purposefully obstructive, but NBH is not entitled to misconstrue that position simply

because it disagrees with it.  At no time did Pruco ever promise NBH that it would begin sending

notices about the policy directly to NBH, and thus, NBH has failed to demonstrate a triable issue

of fact regarding its promissory estoppel claim.

---

its policies prevented it from doing something for NBH), the argument is also without support in
the record.  NBH has produced several documents that appear to be internal Pruco policy
statements. One, entitled "Written Request from the Owner" states that "a written request [for an
address change?] is acceptable if it contains the policy number, new address, and if it is signed
by the owner."  (Emphasis added.)  Another document, entitled "Collateral Assignment" states
"When a written request for an address change is received on a policy that has a collateral
assignment, only the signature of the owner is required.  It is not necessary to obtain the
signature of the collateral assignee."  (Emphasis added.)

### 2. Unjust enrichment

The Court will not belabor the analysis further.  NBH argues that, by agreeing to receive NBH's premium payment on JPE's behalf, Pruco was somehow unjustly enriched, requiring the Court to exercise equitable powers to set the parties' balance aright.  Once again, NBH is arguing what it <u>wishes</u> the facts reflected, not what they actually demonstrate.  NBH was advised by Pruco that payment of the past-due premiums in March 2012 would reinstate the policy and ensure coverage of Mr. Camacho until the next premium payment fell due in June 2012.  NBH made the payment and received precisely the benefit of its bargain: coverage of Mr. Camacho's life from March 2012 to June 2012.  Pruco's representative expressly advised Ms. Drake of the limited duration of coverage that her payment would secure, as well as the due date for the next premium payment.  NBH's failure to take action based on that knowledge again in June 2012 is not a matter that cries out for relief in equity.

NBH argues that the circumstances are unjust because Pruco never advised it that Mr. Camacho had been actively seeking to cancel the policy since January 2012.  Admittedly, NBH is correct insofar as there is no evidence in the record that would suggest that Pruco conveyed that fact to NBH.  But the fact is also irrelevant: notwithstanding Mr. Camacho's efforts to cancel the policy in January 2012, NBH was able to secure the continuation of the policy in March 2012 by paying the outstanding premiums, and there is no reason to believe that, had NBH elected to continue paying the premiums in June 2012, Pruco would have continued to accept them and would continue to insure Mr. Camacho, even over his apparent objection.  Moreover, the record reflects that, as of the March 2012 phone call, Ms. Drake (and thus NBH) knew that Mr. Camacho would be uncooperative in assisting them in continuing the policy.  Ms. Drake stated precisely as much: "this client is delinquent and so my guess is they're not going to

be cooperative." Pruco can hardly be criticized for failing to inform NBH of information that NBH already knew.

Accordingly, the Court finds that the record reflects that NBH received precisely what it bargained for when it made the March 2012 premium payment to Pruco: reinstatement of the policy and coverage of Mr. Camacho through June 2012. Thus, Pruco is entitled to summary judgment on NBH's unjust enrichment claim.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Pruco's Motion for Summary Judgment (**#39**) is **GRANTED** and NBH Bank's Motion for Summary Judgment (**#40**) is **DENIED** as moot. Summary Judgment is entered in favor of Pruco and against NBH Bank with regard to all claims. The Clerk is directed to close the case.

Dated this 28th day of July, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge